IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| John B. Graf, III and Joanne Graf, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:10-cv-01407-JOF |
| Inglett & Stubbs International, Ltd., : | |
| : | |
| Defendant. : | |

**OPINION & ORDER**

This matter is before the court on Defendant's motion for sanctions [8]; Defendant's motion to dismiss and for sanctions [11]; and Defendant's motion for a hearing [13].

**I.     Background**

**A.     Procedural History**

Plaintiffs, John Graf III and JoAnne Graf, represented by counsel, filed suit against Defendant, Inglett & Stubbs International, Ltd., on March 30, 2010, in the Superior Court of Cobb County. Plaintiff raised claims of negligent supervision, failure to maintain a safe workplace, negligent training, intentional infliction of emotional distress, and loss of consortium. Defendant removed the suit to this court on May 10, 2010. Defendant is a government contractor providing electrical repair, installation, maintenance, and related services at various facilities in Afghanistan pursuant to a contract with the United States

military. Plaintiff John Graf worked as a journeyman electrician for Defendant on three separate assignments to Afghanistan.

**B.    Facts**

Mr. Graf began working for Defendant in June 2001. *See* Cmplt., ¶ 11. In March 2003, Mr. Graf left for his first assignment in Afghanistan. *Id.*, ¶ 12. Mr. Graf avers that he experienced innumerable rocket attacks and rounds under fire while in Afghanistan, including sustaining eye injuries while traveling with soldiers in a convoy and seeing a solder killed in his presence. *Id.*, ¶ 15. Plaintiffs began expressing concern about the situation in Afghanistan during late 2007 and early 2008. *Id.*, ¶¶ 16-22. Mr. Graf was terminated on April 1, 2008 for changing his itinerary dates for his vacation without proper authorization. *Id.*, ¶ 23. Mr. Graf believes these reasons for termination were pretextual and the real reason for his termination was his comments about assignments to Afghanistan. *Id.*

Upon his return to the United States, Mr. Graf filed a grievance through his Union, Electrical IBEW 613. *Id.*, ¶ 26. As a result of the grievance process, Defendant changed the reason for Mr. Graf's termination to "reduction of work force." *Id.* Plaintiffs allege that "[s]ince being terminated from Defendant in April 2008 and returning to the United States, Graf has been unable to work due to the post-traumatic stress disorder and injuries he suffered as a result of his employment and as a result of the emotional distress associated with his termination from employment with Defendant." *Id.*, ¶ 27.

2

The court also takes judicial notice of the Joint Stipulation entered in the case of *John Graf v. Inglett & Stubbs International, Inc.*, before the United States Department of Labor, Office of Workers' Compensation Programs, after Mr. Graf had filed a claim which alleged that he suffered from Post Traumatic Stress Disorder as a result of his employment in Afghanistan. *See* Defendant's Motion for Sanctions, Exh. 4. The Stipulation recognizes that Mr. Graf's claims arise under the Defense Base Act extension of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 *et seq. Id.*, ¶ 1. Further, Mr. Graf sought compensation for injuries suffered by him while he was employed by Inglett & Stubbs in Afghanistan. *Id.*, ¶ 2. Inglett & Stubbs' insurance carrier began to pay Mr. Graf temporary total disability benefits on September 11, 2009 retroactive to July 29, 2008. *Id.*, ¶ 3. The Stipulation further notes some mathematical adjustment to the amount of payment each month. *Id.*, ¶¶ 4-7. Finally, the Stipulation specifies that it does not relate to Mr. Graf's alleged eye injuries. *Id.*, ¶ 10.

**C.     Contentions**

Defendant contends that Plaintiffs' complaint is without merit because workers' compensation insurance required under the Defense Base Act provides the exclusive remedy for Mr. Graf's tort claims. Defendant also avers that Mr. Graf went through a grievance process with his union after his termination and that process resolved issues related to why he was terminated. Finally, Defendant argues that Plaintiffs have failed to prosecute their

3

case by not attending properly noticed depositions, not filing Initial Disclosures or Certificate of Interested Persons, and not responding to any motions filed by Defendant.

Plaintiffs have not responded to Defendant's motions and the court deems them to be unopposed under Local Rule 7.1D.

## II.   Discussion

### A.   Motion to Dismiss

As to the merits of Plaintiffs' complaint, the court finds *Ross v. DynCorp*, 362 F. Supp. 2d 344 (D.D.C. 2005), to be instructive.  There, an individual employed by DynCorp was sent to Colombia to work on drug interdiction efforts as part of DynCorp's contract with the United States Department of State.  The individual was killed while refueling a plane in Colombia.  The decedent's family was unable to have the body shipped to them for 8 days after his death and sued DynCorp for negligence relating to the refueling incident, as well as intentional infliction of emotional distress as a result of the communications concerning the manner in which to return the decedent's body to the family.  *Id.* at 349.  DynCorp moved to dismiss the plaintiffs' complaint as barred by the exclusive remedy provisions of the federal Defense Base Act and because the plaintiffs failed to allege sufficient facts to raise an intentional infliction of emotional distress claim.

The court first ruled that the remedial provisions of the Longshore Act (through the Defense Base Act) did provide the exclusive remedies for the decedent's death and did

displace the plaintiffs' common law negligence-based claims against DynCorp, as well as those claims which were derivative of the common law negligence claims. *Id.* at 352. The court also found that the plaintiffs had not provided sufficient evidence from which a jury could conclude that the defendant had intentionally inflicted emotional distress. *Id.* at 358. *See also Fisher v. Halliburton*, 390 F. Supp. 2d 610, 613 (S.D. Tex. 2005) (the Defense Base Act "provides an employee's exclusive remedy if the employee was engaged in employment outside the United States under a contract between his employer and the United States for the purpose of engaging in public work, including contracts and projects in connection with national defense and war activities, where the employee suffered an injury within the course and scope of his employment").

As the court took judicial notice above, Plaintiffs here have already stipulated that the Defense Base Act covers Mr. Graf's Post Traumatic Stress Disorder claims. Thus, the court concludes that Plaintiffs' negligence-based claims are without merit as the Defense Base Act provides the exclusive remedy and Mr. Graf settled this matter with the worker's compensation insurance carrier for Inglett & Stubbs as evidenced by the Stipulation entered in his case before the United States Department of Labor. Mrs. Graf's derivative loss of consortium claim is therefore also barred.

Plaintiffs' intentional infliction of emotional distress claim requires a different analysis. That claim relates to the manner in which Mr. Graf's termination was handled.

5

Mr. Graf alleges in his complaint that Inglett & Stubbs terminated him for pretextual reasons and not because he made any unauthorized change in his leave days. Plaintiffs assert in their complaint that Mr. Graf suffered emotional distress as a result of his termination. It is not clear to the court that this claim would be barred by the exclusivity of the Defense Base Act.

The court need not reach this issue, however, because Mr. Graf already adjudicated this claim through the grievance process with his Union. *See* Cmpt., ¶ 26. Because Plaintiffs referenced the grievance process in their complaint, the court can also consider the grievance documents attached to Defendant's motion for sanctions whose authenticity has not been contested. *SFM Holdings, Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling on a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claims, and (2) its authenticity is not challenged."). Those documents confirm that Mr. Graf grieved under Section 3.27 of the contract because he was not given a "four part termination." *See* Defendant's Motion for Sanctions, Exh. 2. The settlement requested was for "[t]ermination changed to Reduction in Force and 8 hours of pay." *Id.*

Because Plaintiffs' negligence-based common law claims are barred by the exclusivity of the Defense Base Act worker's compensation scheme and because Mr. Graf already settled issues related to his termination through the union grievance process, the court GRANTS Defendant's motion to dismiss [11].

6

### B.     Motion for Rule 11 Sanctions

On August 3, 2010, Defendant filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 because (1) Plaintiffs' claims are not warranted by existing law; (2) Plaintiffs cannot make a non-frivolous argument for the extension, modification, or reversal of existing law or establishment of new law; and (3) Plaintiffs' allegations and other factual contention have no evidentiary support.  Defendant's counsel sent a letter to Plaintiffs' counsel on May 17, 2010, outlining the reasons why Defendant believed Plaintiffs' claims were meritless and asking Plaintiffs to dismiss their case. Plaintiffs' counsel did not respond to the letter and Defendant's counsel sent a second letter on June 16, 2010.  The June 16th letter included a notice that Defendant would prepare a Rule 11 motion if the case were not dismissed. Plaintiffs' counsel did not respond to the June letter. On July 9, 2010, Defendant served Plaintiffs with a copy of their Rule 11 motion pursuant to Rule 11(c)(1)(A). Defendant then filed the instant motion. Plaintiffs have not responded. On October 6, 2010, Defendant asked the court to set a hearing on the Rule 11 motion.

On October 6, 2010, Defendant also filed a motion to dismiss pursuant to Rule 37(d)(1)(A)(i) and Rule 41(b) and for sanctions pursuant to Rule 37(b)(2)(C).  Defendant argues that Plaintiffs have failed to make the appropriate mandatory filings with the court, including Certificate of Interested Persons and Initial Disclosures. Defendant further states that Plaintiffs have failed to respond to motions or communications from Defendant's

7

counsel and failed to participate in discovery, including failure to appear for properly noticed depositions. Defendant's counsel indicates that she attempted to confer with Plaintiffs' counsel about the motions for discovery sanctions, but after receiving one e-mail response from Plaintiffs' counsel, no other communication occurred. Plaintiffs' counsel did not respond to Defendant's motion to dismiss.

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). The Eleventh Circuit has identified three types of conduct by an attorney or party that warrant the imposition of Rule 11 sanctions. First, sanctions are warranted where a party or attorney files a pleading or other paper that has no reasonable factual basis. Second, sanctions are warranted where a party or attorney advances a legal theory that has no reasonable chance of success under the decisional or statutory law and that cannot be advanced as a reasonable argument to reverse, modify, or extend the law. Finally, sanctions are warranted where a party or attorney files a motion or pleading for purposes of harassment or delay. *See United States v. Milam*, 855 F.2d 739, 742 (11th Cir. 1988); *accord Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

Rule 11 incorporates an objective standard of "reasonableness under the circumstances." *Donaldson*, 819 F.2d at 1556. Courts determine "whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified."

8

*Kaplan v. Daimler Chrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (citing *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002)). The court's inquiry focuses only on the merits of the objectionable paper "gleaned from facts and law known or available to the attorney at the time of filing." *Jones v. International Riding Helmets, Inc.*, 49 F.3d 692, 694-95 (11th Cir. 1995) (emphasis in original). In this circuit, courts considering Rule 11 sanctions must engage in a two-step inquiry: (1) whether the party's claims are objectively frivolous; and (2) if so, whether the person who signed the objectionable papers should have been aware that the claims were frivolous. *See*, *e.g.*, *Baker*, 158 F.3d at 524; *Jones*, 49 F.3d at 695.

A claim is frivolous if no reasonably competent attorney could determine it has any "reasonable chance of success" or there is reasonable argument to change existing law. *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996). *See also Thomas v. Early County*, 360 Fed. Appx. 71, 74 (11th Cir. 2010) (Rule 11(b)(2) violated where "allegations of vicarious liability fail as a matter of long-established law") and *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915-16 (11th Cir. 2003) (*per curiam*) (reversing Rule 11 sanctions where there was "scant on-point authority" to show plaintiff had no chance of success).

In determining the reasonableness of a paper's legal basis, "a court may consider the time available to prepare the pleading; the complexity of the legal issues; the plausibility of

9

the argument; and whether the party is proceeding pro se." *Pelletier v. Zweifel*, 921 F.2d 1465, 1514 n.88 (11th Cir. 1991). The court may also consider whether the attorney had to rely on the client for information. *See Worldwide Primates*, 87 F.3d at 1254.[1]

After careful review of the facts and circumstances in this case, the court will impose limited Rule 11 sanctions. The court finds there is no evidence to show that at the time of filing the complaint, Plaintiffs' counsel was sufficiently aware of the facts and law to understand that the exclusivity of the Defense Base Act would bar tort-like claims against Defendant. For example, the court does not know whether Plaintiffs, themselves, informed their counsel that Mr. Graf had been through a worker's compensation proceeding before the United States Department of Labor.

The court further notes that while the case law in this area is not in dispute, and therefore Plaintiffs' claims are objectively frivolous, there is not a flood of cases on point. The court recognizes, however, that Defendant's counsel was diligent in informing

---

[1] In *Baker v. Alderman*, 158 F.3d 516 (11th Cir. 1998), the court considered the necessity of holding a hearing before imposing Rule 11 sanctions and noted it is not mandatory to hold a hearing, but it can be "prudent." *Id.* at 525-26. There, the court held that because the imposition of sanctions was limited to attorney's fees, was determined by the judge familiar with the proceedings, and because there is no requirement that a hearing be held, the court did not abuse its discretion in not holding a hearing before imposing sanctions. *Id.* at 526.

Here, the court finds a hearing is not necessary because Plaintiffs' counsel had the opportunity to respond to two letters from Defendant's counsel, Defendant's first motion for sanctions, and Defendant's motion to dismiss and for sanctions. Plaintiffs' counsel did not respond to any of these four documents. Therefore, the court DENIES AS MOOT Defendant's motion for hearing [13].

Plaintiffs' counsel of the complete set of facts and set out quite clearly and correctly the impact the prior proceedings would have on the instant complaint.  Defendant's counsel followed the "safe harbor" provisions of Rule 11 and provided Plaintiffs' counsel with numerous opportunities to review the basis for Plaintiffs' complaint and reassess.  Plaintiffs' counsel obviously did not do this.  Thus, at least after Defendant's counsel sent its Rule 11 "safe harbor" letter, Plaintiffs' counsel was aware of the problems with the complaint.  And perhaps most troubling, Plaintiffs' counsel did not respond to Defendant's motion for sanctions or motion to dismiss.  Plaintiffs' counsel did not meaningfully participate in any good faith effort to resolve the issues.  Nor did Plaintiffs' counsel secure the presence of his clients at noticed depositions.  The inaction of Plaintiffs' counsel without doubt increased the cost to Defendant of presenting its motion to dismiss and motion for sanctions to the court.

Taking into account these thoughts, the court will impose Rule 11 sanctions in the form of awarding Defendant its fees for attendance at depositions that did not go forward and for filing its second motion to dismiss and motion for sanctions.  *See* Docket Entry [11].  Defendant's counsel is DIRECTED to file a motion for attorney's fees within twenty (20) days of the date of this order.  The court expects the motion will comply with the requirements of *Norman v. Housing Authority*, 836 F.2d 1292 (11th Cir. 1988), and *ACLU*

11

*v. Barnes*, 168 F.3d 423, 430 (11th Cir. 1999).  The court GRANTS Defendant's motion for sanctions [8].

### III.   Conclusion

The court GRANTS Defendant's motion for sanctions [8]; GRANTS Defendant's motion to dismiss and for sanctions [11]; and DENIES AS MOOT Defendant's motion for a hearing [13].  The Clerk of the Court is DIRECTED to CLOSE this case.

**IT IS SO ORDERED** this 19th day of November 2010.

              /s   J. Owen Forrester
              J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

12

AO 72A
(Rev.8/82)